UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Eastern Division

|  |  |
|---|---|
| PAUL PERRUZZI, <br> JEREMIAH SULLIVAN, <br> on behalf of themselves and all <br> others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> CAMPBELL SOUP COMPANY, <br> and SNYDER'S-LANCE, INC. <br><br> Defendants | Civil Action No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

The Plaintiffs work as delivery drivers for Campbell Soup Company ("Campbell's"), following its 2018 acquisition of snack company Snyder's-Lance, Inc. ("Snyder's-Lance") and its subsidiaries (collectively "S-L"). They bring this wage action on behalf of themselves and all others similarly situated. Although the Plaintiffs are employees for purposes of state and federal law, the Defendant has misclassified them as independent contractors. As a result, the Plaintiffs and similarly situated delivery drivers bring this claim for unpaid wages, overtime compensation, and other damages arising from that misclassification.

### Parties, Jurisdiction, and Venue

1. Plaintiff Paul Perruzzi (herein "Mr. Perruzzi") is an individual residing at 12 Banbury Drive, Westford, MA 01886. For approximately thirty years, Mr. Perruzzi has worked as a delivery driver for Campbell's or its predecessors, most recently in Lowell, Chelmsford, and Groton.

2. Plaintiff Jeremiah Sullivan (herein "Mr. Sullivan") is an individual residing at 24 Garland Road, Newton, MA 02459. From approximately August 2012, Mr. Sullivan has worked as a delivery driver for Campbell's or its predecessors, in or around Watertown and Newton.

3. The Plaintiffs bring these claims individually and on behalf of a class of similarly situated individuals, including all drivers who performed deliveries in Massachusetts for Campbell's and its predecessors.

4. Defendant Campbell Soup Company (herein "Campbell's") is a New Jersey corporation with its principal business address at 1 Campbell Place, Camden, NJ 08103.

5. Defendant Snyder's-Lance, Inc. (herein "Snyder's-Lance") is a North Carolina corporation, now a wholly owned subsidiary of Campbell's, with its principal business address at 1 Campbell Place, Camden, NJ 01810.

6. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C.A. §1332.

7. Venue is appropriate pursuant to 28 U.S.C.A. §1391 because a substantial part of the events giving rise to the claims herein occurred in Massachusetts.

## Facts

8. Defendant Campbell's is one of the largest processed foods manufacturers in the United States, producing meals, beverages, and snacks under a variety of brand names and distributing their products across the country, including in Massachusetts.

9. In March 2018, Campbell's acquired and absorbed Defendant Snyder's-Lance and its subsidiaries, including S-L Distribution Company, LLC, S-L Distribution Co., Inc., and S-L Routes, LLC (collectively "S-L").

10. Following the acquisition, Campbell's merged the Snyder's of Hanover and Lance product lines into its "Campbell Snacks" division; adopted the distribution model already in use

by Snyder's-Lance, including the methods and routes; and continued relying upon existing contracts for the distribution of Snyder's-Lance products and "partner products."

11. As part of that distribution model, the Defendants employ individuals ("delivery drivers") to deliver their snack products and stock shelves at stores in Massachusetts and other New England states, along distribution routes defined by Campbell's.

12. The Defendants classify their delivery drivers as independent contractors, rather than employees, and refer to them as "independent distributors."

13. In order to distribute the Defendants' products, each delivery driver is required to establish their own corporate entity, at the Defendants' direction.

14. Mr. Perruzzi has worked as a delivery driver for Campbell's, Snyder's-Lance, and their subsidiaries or predecessors for approximately thirty years.

15. In February 2012, at the instruction of Defendant Snyder's-Lance, Mr. Perruzzi registered the "independent distributor" Quality Snack Foods LLC.

16. Prior to February 2012, Mr. Perruzzi was delivering for Defendant Snyder's-Lance and its predecessors, but he was told by management in 2012 that he either had to sign the agreement and begin working as an "independent distributor," or he would be unable to continue working as a delivery driver.

17. Mr. Sullivan is a delivery driver for Campbell's and has been exclusively distributing Campbell's products, or those of its predecessors, since 2012.

18. In January 2012, at the instruction of Defendant Snyder's-Lance, Mr. Sullivan registered the "independent distributor" Sully's Snacks, Inc.,

19. Once each delivery driver has formed their "independent distributor" entity, following the Defendants' instructions, the delivery drivers are required to purchase "distribution rights" from

the Defendants, paying for the ability to distribute exclusively Snyder's-Lance products along specific routes defined by the Defendants.

20. Although delivery drivers are only permitted to distribute products on behalf of Campbell's, Campbell's utilizes multiple methods to distribute its products—including Snyder's-Lance brands—to stores along those same routes.

21. To purchase the "distribution rights" from the Defendants, delivery drivers are required to sign non-negotiable "distributor agreements" drafted entirely by the Defendants, without input from the delivery drivers.

22. The Defendants set the price of each route, without giving drivers an opportunity to negotiate the price.

23. Purchase of the distribution rights typically requires delivery drivers to finance the purchase, through the Defendants' bank of choice, with a five- to ten-percent down payment, at interest rates as high as 8%, over a repayment period of ten years.

24. Although the delivery drivers purportedly purchase the rights to each defined territory, even once the loan is paid off the Defendants retain veto power over any sale of those rights to another delivery driver, and any potential delivery driver must be approved prior to any sale.

25. In the event "distribution rights" to a particular route are sold to another delivery driver, the Defendants take a 5% "transfer fee" from the sale.

26. Mr. Perruzzi and Mr. Sullivan both deliver exclusively Campbell's products, mainly in the Snyder's-Lance brand family on their defined routes and are not permitted to distribute products outside of "partner" brands specifically authorized by Campbell's.

27. Mr. Perruzzi first bought a route from Snyder's-Lance in February 2012, when he was presented with the "take it or leave it" choice to lose his job or become an "independent

distributor." Mr. Perruzzi was urged to purchase the "distribution rights" for multiple routes and has since worked multiple routes in the Commonwealth.

28. In May 2018, after Campbell's acquired Snyder's-Lance, Mr. Perruzzi bought his current route for approximately $175,000.

29. Mr. Perruzzi's route covers five stores in Lowell, Chelmsford, and Groton.

30. Mr. Sullivan purchased a route, for approximately $123,000, from Snyder's-Lance in August 2012 and has made deliveries to stores on that route since that time, including after Campbell's acquired Snyder's-Lance.

31. Mr. Sullivan's route includes five stores in Watertown and Newton.

32. The Plaintiffs regularly work anywhere from 35 to 50 hours per week, delivering the Defendants' products along their designated routes.

33. The Plaintiffs have been treated as independent contractors by the Defendants, not as employees.

34. As "independent distributors," the Plaintiffs have not been paid hourly compensation; have not received benefits, paid time off, or protections should they be injured while delivering Campbell's products; and have not been entitled to compensation for expenses.

35. The Plaintiffs are responsible for paying for their own health insurance costs.

36. If the Plaintiffs are injured or become ill, they remain responsible for ensuring the deliveries of Campbell's products are made on their respective routes.

37. The Defendants do not offer the Plaintiffs any paid sick time and, if they are unable to find and pay someone to make the deliveries, the Plaintiffs must continue making the deliveries themselves regardless of whether they are sick or injured.

38. The Defendants retain the right to unilaterally terminate the agreement and reclaim the delivery route if a driver fails to meet delivery requirements or otherwise satisfactorily maintain service along the defined route.

39. Campbell's has not paid payroll taxes for the Plaintiffs' work as "distributors," and by shifting the burden of most expenses onto the Plaintiffs, Campbell's has saved substantial amounts of money.

40. In addition to the substantial initial cost of purchasing each route, expenses borne by the Plaintiffs have included but have not been limited to:

   a. Purchase of delivery trucks, including loan payments and interest, registration and inspection fees, and taxes;

   b. Maintenance costs of delivery trucks;

   c. Rental costs for replacement trucks during necessary maintenance;

   d. Fuel costs;

   e. Vehicle insurance;

   f. Liability insurance, as required by Campbell's;

   g. Compensation of additional delivery drivers necessary to operate routes; and

   h. Other costs of operating an "independent distributor" business.

41. Delivery drivers are required to assume all risk of the business, and in addition to the aforementioned expenses, Campbell's shifts costs of destroyed or expired product to the Plaintiffs.

42. Despite defining the Plaintiffs as independent contractors, Campbell's has continued to exercise control over almost all aspects of their work as delivery drivers.

a. Campbell's maintains the authority to unilaterally change the terms of delivery drivers' commissions:
   i. After Campbell's acquired Snyder's-Lance in 2018, they reduced Plaintiff's commission percentages, thereby reducing their earnings;
   ii. As recently as April 2024, Campbell's unilaterally altered reimbursement rates and procedures;
b. Campbell's controls the prices of its products, and the Plaintiffs are unable to negotiate lower prices to reduce their base operating costs;
c. Campbell's also caps "allocations" of products to each delivery driver, limiting their access to often more popular, better-selling products;
d. Campbell's dictates the sales price of each product, including both regular price and sale or promotional prices (e.g. fixed discounts and "buy one, get one" sales);
e. Plaintiffs have no authority to negotiate sale prices with stores, either to raise an item's regular price to increase profits or setting a promotional price to increase sales of a slow-moving product;
f. Despite strong sales of so-called "partner" brand products, the Plaintiffs are unable to distribute those products if not explicitly authorized by Campbell's; however, Campbell's has failed to maintain relationships with partner brands, resulting in loss of profitable partner brand products and reducing Plaintiffs' sales, earnings, and purported route values;
g. The Defendants provide training videos for delivery drivers specific to Campbell's' Snyder's-Lance product lines, ordering, and delivery procedures;

    h.  Campbell's retains the authority to unilaterally change the procedures for orders and the technology used, including recent changes from convenient handhelds to larger iPads for orders and inventory, and a change from warehouse "shopping" to all advanced orders;

    i.  Campbell's has the authority to unilaterally change the pickup locations, at warehouses maintained by the Defendants in the Commonwealth, as well as pickup and delivery schedules;

43. Although the delivery drivers ostensibly purchased the "rights" to certain stores, Campbell's retains the ability to unilaterally insert products into those stores, and the drivers are responsible for ensuring such products sell.

44. Insertion of such unordered products interferes with the drivers' ability to order their own chosen products, and they are paid reduced commissions on those sales while still being responsible for costs of any unsold product.

45. Further, though the drivers are responsible for ensuring the sale of product unilaterally inserted into stores by Campbell's, those sales do not reflect in the annual sales average used to set the purported value of the route, should the drivers choose to sell the "rights" to that route.

46. Campbell's regularly fails to pay purported sales "commissions" in a timely manner, sometimes with delays of multiple months before payment is made to drivers.

## Class Allegations

47. The named Plaintiffs bring this action on behalf of a class of similarly situated individuals. Specifically, they seek to represent the class comprising all individuals who have performing or continue to perform deliveries for Campbell's within Massachusetts.

48. This class is so numerous that joinder of all members is impracticable.

49. There are questions of both law and fact common to all members of the class which make class certification appropriate, and a class action is superior to other methods to fairly and efficiently adjudicate this controversy.

50. Specifically, the common questions shared by all members include:

   a. Whether the Plaintiffs have been misclassified as "independent contractors" under Massachusetts law, M.G.L. ch. 149, §148B;

   b. Whether the Defendants withheld or underpaid wages owed to the Plaintiffs, pursuant to M.G.L. ch. 149, §148, M.G.L. ch. 151, §1A (overtime pay), and M.G.L. ch. 15, §§1 & 2 (oppressive and unreasonable wage);

   c. Whether the Defendants have unjustly enriched themselves based on the labor, payments made, and costs assumed by the Plaintiffs as a result of this "independent distributor" scheme; and

   d. Whether the Defendants have breached their contracts of employment with the Plaintiffs or the implied covenant of good faith and fair dealing in their dealings with the Plaintiffs.

and if so, what the proper measure of damages would be.

51. The claims of the Plaintiffs are typical of the claims of the class members, and the named Plaintiffs and their legal counsel will fairly and adequately protect the interests of the class.

<u>**COUNT I**</u>
**All Defendants**
<u>Violations of M.G.L. ch. 149, §148B</u>

52. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

53. As described in the foregoing paragraphs, the Defendants have misclassified the Plaintiffs and all other similarly situated delivery drivers as independent contractors in violation of M.G.L. ch. 149, §148B, when they are actually employees as a matter of law.

54. Pursuant to M.G.L. ch. 149, §150, the Plaintiffs are entitled to the amount of their damages, including lost wage and benefits that would have been paid had the Defendants properly classified them as employees, and are entitled to have the amount of the lost wages and benefits trebled and to recover their reasonable attorneys' fees and litigation costs.

## COUNT II
### All Defendants
### Violations of M.G.L. ch. 149, §148

55. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

56. As described in the foregoing paragraphs, the Defendants withheld wages earned by the Plaintiffs.

57. Pursuant to M.G.L. ch. 149, §150, the Plaintiffs are entitled to the amount of their damages, including lost wage and benefits, and are entitled to have the amount of the lost wages and benefits trebled and to recover their reasonable attorneys' fees and litigation costs

## COUNT III
### Violations of M.G.L. ch. 151, §1

58. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

59. As a result of the Defendants' conduct described herein, the Plaintiffs were employed at oppressive and unreasonable wage as defined by M.G.L. c. 150 §§ 1 and 2.

60. Because they violated M.G.L. c. 150 § 1, the purported "distributorship" contracts between the Plaintiffs and the Defendants were null and void.

61. Pursuant to M.G.L. c. 151 § 20, the Plaintiffs are entitled to the amount of their lost minimum wage and are entitled to have the amount of the lost wages and benefits trebled and to recover their reasonable attorneys' fees and litigation costs.

## COUNT IV
### Violations of M.G.L. ch. 151, §1A

62. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

63. The Defendants failed to pay the Plaintiffs overtime compensation as required by M.G.L. ch. 151, §1A.

64. Pursuant to M.G.L. ch. 151, §1B, the Plaintiffs are entitled to the amount of their lost overtime compensation and are entitled to have the amount of the lost overtime compensation trebled and to recover their reasonable attorneys' fees and litigation costs.

## COUNT V
### Unjust Enrichment

65. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

66. By their conduct described herein, the Defendants have bene unjustly enriched to the Plaintiffs' detriment and are liable to them for the full amount of the unjust enrichment.

## COUNT VII
### Breach of Contract

67. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

68. By their actions described herein, the Defendants have breached their employment contract with the Plaintiffs and are liable to them in the full amount of their resulting damages.

### COUNT VIII
### Breach of the Implied Covenant of
### Good Faith and Fair Dealing

69. The Plaintiffs restate the allegations in each of the foregoing paragraphs and incorporate them herein.

70. By their actions described herein, the Defendants have breached their covenant of good faith and fair dealing implied in their employment contract with the Plaintiffs and are liable to them in the full amount of their resulting damages.

WHEREFORE, the Plaintiffs respectfully ask this Court, on their own behalf and on behalf of all others similarly situated, for the following relief:

a) Certify a class, including any appropriate sub-classes, of all similarly-situated delivery drivers as to one or more claims, pursuant to Fed. R. Civ. P. 23;

b) Issue a declaratory judgement that the Distribution Agreements are unenforceable, in whole or in part, to the extent that they constitute illegal contracts, were void as a matter of public policy, are unconscionable, were obtained through fraud or coercion, or are otherwise unenforceable for any legal or equitable grounds.

c) Award to the Plaintiffs their damages, including but not limited to treble damages for unpaid wages and overtime compensation;

d) Award to the Plaintiffs their reasonable attorneys' fees and costs of litigation; and

e) Order such other and further relief as the Court shall deem appropriate.

**THE PLAINTIFFS DEMAND A JURY TRIAL
IN THIS MATTER ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

PLAINTIFF PAUL PERRUZZI
PLAINTIFF JEREMIAH SULLIVAN
on behalf of themselves and all others
similarly situated,

By their attorneys,

*/s/ Benjamin Rudolf*
Benjamin C. Rudolf (BBO# 667695)
Sarah H. Varney (BBO# 710319)
Murphy & Rudolf, LLP
446 Main Street, Suite 1503
Worcester, MA 01602
Phone: (508) 425-6330
Fax: (508) 536-0834
brudolf@murphyrudolf.com
varney@murphyrudolf.com

Dated: May 6, 2024