```
 1                UNITED STATES DISTRICT COURT

 2              DISTRICT OF MASSACHUSETTS (Boston)

 3                         No. 1:24-cv-11204-WGY

 4

 5   PAUL PERRUZZI, et al,
               Plaintiffs
 6

 7   vs.

 8

 9   CAMPBELL SOUP COMPANY, et al,
               Defendants
10

11                      * * * * * * * * *

12

13                   For Hearing Before:
                    Judge William G. Young
14

15

16              United States District Court
                District of Massachusetts (Boston)
17              One Courthouse Way
                Boston, Massachusetts 02210
18              Thursday, October 3, 2024

19

20                      * * * * * * * *

21

22           REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
23              United States District Court
           One Courthouse Way, Room 5510, Boston, MA 02210
24                      rhr3tubas@aol.com

25
```

```
 1                      A P P E A R A N C E S

 2

 3    SARAH VARNEY, ESQ.
      BENJAMIN C. RUDOLF, ESQ.
 4        Rudolf, Smith, Griffis & Ruggieri, LLP
          446 Main Street, Suite 1503
 5        Worcester, MA 01608
          (508) 425-6330
 6        Email: Varney@murphyrudolf.com
          For the Plaintiffs
 7

 8    ZACHARY TRIPP, ESQ.
          Weil, Gotshal & Manges
 9        2001 M Street, NW
          Suite 600
10        Washington, DC 20036
          (202) 682-7000
11        Email: Zack.tripp@weil.com
    and
12    ERIC MICHAEL MAKINEN, ESQ.
          Morgan, Lewis & Bockius, LLP
13        110 North Wacker Drive
          Suite 2800
14        Chicago IL 60606
          (312) 324-1000
15        Email: Eric.makinen@morganlewis.com
          For Defendants
16

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2        (Begins, 12:20 p.m.)
 3        THE CLERK:  Now hearing Civil Matter 24-11204,
 4   Perruzzi vs. Campbell Soup.
 5        THE COURT:  And would counsel introduce
 6   themselves.
 7        MS. VARNEY:  Good afternoon, your Honor, Sarah
 8   Varney on behalf of Mr. Sullivan and Mr. Perruzzi.
 9        MR. RUDOLF:  Good afternoon, your Honor, Benjamin
10   Rudolf on behalf of the plaintiffs.
11        THE COURT:  Good afternoon.
12        MR. MAKINEN:  Good afternoon, your Honor, Eric
13   Makinen on behalf of the defendants.
14        MR. TRIPP:  And Zach Tripp on behalf of
15   defendants.
16        THE COURT:  And good afternoon to you both.  Well
17   thank you for attending on this session of this court.
18   Please be seated.
19        It's the plaintiff that bears the burden of
20   demonstrating that the action should go forward in this
21   court.  I will tell you, at the outset, my -- and your
22   action presents what I conceive of as very interesting
23   issues.  But the first issue that I must confront, and I
24   come on the bench thinking that it's dispositive, is
25   this issue of the settlement agreement, and the
```

1    settlement agreement for which your -- the named clients

2    got compensation, um, represented by counsel, has a

3    broad arbitration clause.

4        Doesn't that conclude the matter?

5        MS. VARNEY:  Your Honor, I don't believe it does.

6    We actually did locate one case recently involving

7    Amazon workers, but these drivers for Amazon's

8    distributor companies, um, that when they were onboard,

9    they were actually required to complete an arbitration

10   agreement as part of that onboarding process.  And the

11   Court in that case, which is, I believe --

12       THE COURT:  But that's -- it's -- wait a minute.

13   That's the interesting question.  A difficult question.

14   You found one case, and in the great weight of

15   authority, it goes the other way.  Not decided in the

16   First Circuit.  Very interesting.

17       MS. VARNEY:  Correct, your Honor.

18       THE COURT:  Very interesting.  But that's not this

19   case.  It's undisputed that here we don't have contracts

20   of employment, we have a settlement agreement of a

21   dispute.  Your client signed it.  What else -- how could

22   I simply nullify that and say, "Oh, no, because of the

23   underlying interesting issue, we're now going to go

24   forward in this court?"  I just don't see it.  It

25   doesn't fit the statutory language of Section 1,

1    "Contracts of Employment."

2        MS. VARNEY:  Your Honor, that raises multiple

3    issues both with the freezing and the structure of the

4    settlement agreement itself, um, with this idea that you

5    can somehow contract around Section 1, which at least

6    the Ninth Circuit has already said you can't waive

7    Section 1 protection.  And this Colorado case explicitly

8    said this is essentially an end run, that everything

9    within that settlement agreement had to do with this

10   agreement to perform work.  Even the freezing of the

11   settlement agreement is dealing with, um -- sorry, they

12   don't mention distributors, they mention, um, current

13   contractors.

14       THE COURT:  But, um, believe me I've looked at

15   those cases, I understand those cases, but that doesn't

16   seem to me to be what we have here.  Here, represented

17   by counsel, your client, the named plaintiffs, entered

18   into this agreement -- you know this settlement

19   agreement, that -- it -- where I'm not following you is

20   that it's a settlement agreement of a dispute, which

21   courts favor, unanimously they favor the private

22   resolution of disputes.  And Abraham Lincoln was right,

23   they should be favored.  That's what I have here.  I

24   can't fit it in any way within Section 1.  So it seems

25   to me your remedy is the arbitration to which you

1    voluntarily agreed.

2        MS. VARNEY:  Your Honor, I think when arising out

3    of a dispute over the settlement agreement, and what the

4    settlement agreement specifically did, was because the

5    entire dispute resolution terms are included in this

6    Exhibit F to the settlement agreement, they are phrased

7    in the exact same language, not as the settlement

8    agreement, which referred to current contractors in

9    their -- or as individuals to, and class members, who

10   have this relationship, either individually or through a

11   business entity, that's how the settlement agreement is

12   raised.  In Exhibit F, they revert to the distributor

13   term.

14       So it's very clear that Exhibit F is intended to

15   amend the distributor agreement, it impacts that

16   contract of employment, and that is what the arbitration

17   agreement goes to.  It's not somehow separate.  They

18   didn't contract around it.  They put it into existing

19   agreements and then they used it in all of the

20   agreements going forward.

21       THE COURT:  Yes, but I don't have anybody before

22   me.  I have a putative class, but I don't have anybody

23   before me who was not an actual party represented by

24   counsel to the settlement agreement.  I don't.  I mean

25   so a dicey issue, but interestingly I don't see that I

1    can get to it, is whether I should decertify the class?

2    There is no class, it's a putative class.  But your

3    named plaintiffs executed the settlement agreement.  And

4    I think that's an end of it.

5         If -- let me tease this out so we're very clear on

6    what your rights may be.  If I -- if I -- taking the

7    case in the posture it is now, if I stay it, which is

8    what the Supreme Court says I should do now, if I stay

9    it, then fine, whatever will happen will happen.  I want

10   to talk with them a little bit about whether I could

11   reopen it again if I stay it.  But it looks to me like

12   the forum for your named plaintiffs is arbitration.  Now

13   there may be some limitations on that, and we'll talk to

14   the defendant.  So a putative class then goes to

15   arbitration.

16        So as to everybody else, the statute of

17   limitations is stayed, because until the class is either

18   allowed -- this is one of the interesting aspects of the

19   Supreme Court, I'm not dismissing it, I'm staying it, so

20   now we have a putative class.  I send it off to

21   arbitration.  And eventually it comes back.  Then I may

22   have to confront some of these issues.  But I don't see

23   that I can confront them today.

24        What's the matter with that analysis?

25        MS. VARNEY:  Your Honor, essentially I think it's

1    -- like everything that the defendants are asking you to

2    do, it takes everything too early and at face value, um,

3    which is really contrary to the approach for the rest of

4    the FAA, um, the approach that, um, they've taken to

5    looking at what people actually do.  The approach to

6    looking at this settlement is not looking at it as an

7    individual contract, it is looking at it in -- even just

8    in the terms that it's written.

9        Again, "distributor" is not even defined in

10   Exhibit F, it is defined in the first paragraph of every

11   single distributor agreement as "The Company," it's not

12   defined in the definitional terms of the settlement

13   agreement, and nothing in that settlement agreement

14   itself sets out terms of the arbitration.  Instead, it

15   says, "As a current contractor, you are agreeing that

16   the distributor will be bound to the terms in this

17   Exhibit F."  It is inextricably tied and inseparable

18   from this agreement of these plaintiffs, these

19   individuals human plaintiffs, which separates it from a

20   number of cases they've cited where the actual business

21   entities, and really substantial businesses, were the

22   ones bringing these cases.  But these individual

23   plaintiffs adopted this arbitration agreement into this

24   distributor agreement, that sets out what they are

25   personally obligated to do, and in fact have personal

1  guarantees, as Mr. Perruzzi's affidavit included,

2  obliging them personally to perform that work.

3      So if we look at the actual substance and the

4  factual reality, which again, um, with the FAA looking

5  in, it's not their title, it's the actual reality of

6  what they do.  Interstate commerce, it's not crossing

7  state lines, it's the factual reality of what they're

8  shipping.  And consistent about that, this shouldn't be

9  considered a contract of employment because it can't be

10  separated from the terms of their agreement to do work.

11      THE COURT:  Thank you.  It's very well argued, but

12  respectfully I don't agree with that.  I think on the

13  plain language here a settlement agreement is not a

14  contract of employment.  It is not.  Therefore, this

15  case, in accordance with the recent Supreme Court

16  precedent, will be stayed.

17      Now the defense wants more than that, they want

18  more than compelling arbitration.  I don't compel anyone

19  to do anything, what I'm doing is closing the doors to

20  this court.  It will be stayed, but more than stayed, it

21  will be administratively closed.  It may be reopened on

22  the following conditions.  (1) Upon conclusion of any

23  arbitration.  (2) At the end of 6 months from today's

24  date.  If no arbitration is sought, I shouldn't leave

25  things in limbo with a putative class, if no arbitration

1    is sought or if you decide not to go to arbitration, I

2    will dismiss it.

3         Now let me turn to the defense.  So you're okay

4    with that, that's a win?

5         MR. TRIPP:  I think the, um -- yes, we agree.  I

6    just want to be clear I understand one of the things

7    that you're saying.  We moved for a stay under Section 3

8    and an order to compel arbitration under Section 4.  So

9    we are asking for an order to compel them to arbitrate

10   under Section 4 of the --

11        THE COURT:  I'm just staying it.  I'm just staying

12   it, because I'm not at all clear that it applies at all.

13   I've got -- that federal arbitration applies at all.

14   The exemption doesn't apply.  But I don't know that the

15   statute applies.  I'm operating under Massachusetts law,

16   which fully recognizes the right of private parties to

17   arbitrate.  And so I'm just taking no action on it.

18   That becomes moot.  It's up to them whether they want to

19   arbitrate.

20        Now I have some other reasons that they may seek

21   to reopen it.  (1) -- or I've given two reasons.  If

22   nobody goes to arbitration, it may be dismissed.  If the

23   arbitration takes place and there's a result, the, um --

24   it may be reopened so that the result may be confirmed

25   in court.

1    (3) If Campbell obstructs the arbitration,

2    plaintiffs may seek to reopen it.  (4) if the, um --

3    here there's a class-action waiver, that's against the

4    public policy of Massachusetts, this Court has already

5    decided that in the District Court decision in **Fraga**,

6    which I take it is confirmed by the Court of Appeals.

7        And so if they seek class arbitration, in this

8    Court's view, while everything is left to the

9    arbitrator, that is not, the law is clear on that.  And

10   so, um, if the arbitrator were not to go forward on that

11   basis, or arbitrators, that would be clear error and the

12   plaintiffs may seek to reopen it.

13       All right, I think that's the order of the Court.

14   Is there anything else that I should do?  I think not.

15       MR. TRIPP:  Your Honor, we were asking for a stay

16   and to compel under the Federal Arbitration Act, which

17   would preempt the class waiver.

18       THE COURT:  Well (1) I don't see the application

19   of the Federal Arbitration Act here.  A settlement

20   agreement -- that's like coming in, where you've got a

21   settlement agreement, it's undisputed, a private

22   settlement agreement between two entities, all your way,

23   and you say, "Oh, by the way, because it has an

24   arbitration agreement, we want your order to arbitrate."

25   But there is no contract of employment here.  That's

1    your strongest point.

2        MR. TRIPP:  They're the ones who need the contract

3    of employment, we -- Section 1 applies because, um, on

4    just the face of this agreement, right?  The ordinary

5    rule under the FAA is that contracts to arbitrate are

6    enforced as written.  The settlement agreement is a

7    contract to arbitrate and it does not fit within the

8    narrow exception for the reasons you identified, which

9    is it's not a contract of employment.

10        THE COURT:  That's right, I agree.

11        MR. TRIPP:  That means the FAA applies, we get the

12    order to stay, and we get the order to compel, and the

13    FAA applies, which means that there's going to be

14    individual arbitration.

15        THE COURT:  I think my order functionally is

16    sufficient, unless they go to arbitration, it will be

17    dismissed, but under the terms that I've set out.

18    That's the order of the Court.  Everybody's rights are

19    saved.  Thank you very much.

20        We'll recess.

21        (Ends, 12:30 p.m.)

22

23

24

25

```
1                    C E R T I F I C A T E

2

3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

4     do hereby certify that the foregoing record is a true

5     and accurate transcription of my stenographic notes,

6     before Judge William G. Young, on Thursday, October 3,

7     2024, to the best of my skill and ability.

8

9

10
      /s/ Richard H. Romanow 10-08-24
11    _____
      RICHARD H. ROMANOW  Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```